**IN THE COURT OF APPEALS OF IOWA**

No. 20-1245
Filed July 21, 2021

**IN THE MATTER OF THE ESTATE OF KARL A. KLOSTER, Deceased.**

**SANDRA KLOSTER,**
     Appellant.
_____

Appeal from the Iowa District Court for Marion County, Elisabeth S. Reynoldson, Judge.

Sandra Kloster appeals the order denying her claim for an elective share as surviving spouse of Karl Kloster's estate. **AFFIRMED.**

Nicole S. Facio of Newbrough Law Firm, LLP, Ames, for appellant.

Andrew B. Howie of Shindler, Anderson, Goplerud & Weese, P.C., West Des Moines, for appellee.

Heard by Doyle, P.J., and Mullins and May, JJ.

**DOYLE, Presiding Judge.**

Sandra Kloster appeals the order denying her claim for an elective share as surviving spouse of Karl Kloster's estate. She challenges the district court's finding that the premarital agreement she signed was enforceable, arguing it was procedurally unconscionable. She also contends her decision to sign the agreement was not informed because Karl failed to provide a fair or reasonable financial disclosure and she had inadequate knowledge of his finances. Because Sandra has not met her burden of showing the premarital agreement is unenforceable, we affirm.

**I. Background Facts and Proceedings.**

Sandra met Karl Kloster in December 2007. At the time, Sandra lived in Council Bluffs and worked as a long-haul truck driver while Karl lived and worked in Knoxville. The two began getting to know each other through phone calls and meeting briefly in person at rest areas and truck stops. Karl also visited with Sandra at her home a couple of times and Sandra visited Karl in Knoxville.

In May 2008, Karl asked Sandra to marry him and move to Knoxville. Sandra agreed and moved into Karl's home in June. They married two weeks later. It was the third marriage for each.

The day before they married, Karl brought Sandra to the office of his attorney, Barry Griffith. Griffith presented Sandra with a premarital agreement, which both Sandra and Karl signed and Griffith notarized. The agreement states:

> WHEREAS, Karl A. Kloster and Sandra Hawks are mature adults each having been married before and each having children from their prior marriages who are now adults and said Karl A. Kloster and Sandra Hawks now desiring to enter into marriage with one another and in anticipation thereof, they desire by this Premarital

> Agreement, to fix and determine the rights each shall have in the property and the estate of the other by reason of their marriage, and to accept the provisions of this agreement as clear definition, full discharge, settlement, and satisfaction of all their rights and claims in the property of the other.

Under the agreement, each party would retain their respective separate property "free and clear from all claims by the other of inheritance, dower or distributive share, homestead, support, or any other interest commonly given by law to parties becoming husband and wife." It also provides that after Karl's death, Sandra could live in the Knoxville residence until she remarried or lived outside the home for more than one year. While Sandra remained in the Knoxville home, Karl's estate would pay the utilities, maintenance of the property, real estate taxes, and similar expenses, along with providing Sandra an allowance of $400 per month. By signing the agreement, Sandra, and Karl agreed that they had made full disclosure of their financial assets and liabilities were freely entering into the agreement. The agreement also states that Griffith represented Karl solely and that each party had a chance to consult independent legal counsel. Attached to the agreement was a statement of Karl's assets and liabilities, showing a net worth in excess of $1,200,000. Sandra's statement of assets and liabilities states only that she had "more assets than liabilities" and knew of no potential lawsuits against her.

In 2019, Sandra petitioned to dissolve the marriage. Karl died before the divorce was finalized. After the court admitted Karl's will into probate and appointed his son as executor in accordance with Karl's wishes, Sandra applied for an allowance as Karl's surviving spouse and also to take her elective share of the estate. The court ultimately found the premarital agreement enforceable and denied the portion of Sandra's application seeking an elective share of the estate.

It ordered the estate to pay Sandra spousal allowance of $1000 per month for twelve months.

**II. Scope and Standard of Review.**

Iowa law provides the surviving spouse may take an elective share of the decedent's estate. *See* Iowa Code § 633.236 (2019). The elective share is limited to one-third in value of the property the decedent possessed "to which the surviving spouse has made no express written relinquishment of right." *See id.* § 633.238(1)(a). A valid premarital agreement that states one shall make no claims against the other against the estate for right of inheritance waives a surviving spouse's claim to take an elective share against the will. *See In re Estate of Spurgeon*, 572 N.W.2d 595, 598-99 (Iowa 1998).

Sandra argues the premarital agreement is unenforceable, claiming it was procedurally unconscionable and her decision to sign it was not informed. *See* Iowa Code § 596.8(1)(b) (providing a premarital agreement is unenforceable if the it was unconscionable when executed), (c) (providing a premarital agreement is unenforceable if one spouse was not provided a fair and reasonable financial disclosure and that spouse could not reasonably have had an adequate knowledge of the other spouse's finances). A claim for an elective share and the question of a premarital agreement's validity are both tried in equity, and our review is de novo. *See In re Estate of Myers*, 825 N.W.2d 1, 3 (Iowa 2012); *In re Marriage of Shanks*, 758 N.W.2d 506, 511 (Iowa 2008). Sandra bears the burden of proving the agreement is unenforceable. *See Shanks*, 758 N.W.2d at 511.

Turning first to whether the premarital agreement was procedurally unconscionable, our primary focus "is the advantaged party's exploitation of the

disadvantaged party's lack of understanding or unequal bargaining power." *Id.* at 517.

> Courts have found the following factors, among others, are relevant to procedural unconscionability: the disadvantaged party's opportunity to seek independent counsel; the relative sophistication of the parties in legal and financial matters; the temporal proximity between the introduction of the premarital agreement and the wedding date; the use of highly technical or confusing language or fine print; and the use of fraudulent or deceptive practices to procure the disadvantaged party's assent to the agreement.

*Id.* at 517-18 (internal citations omitted). Of these factors, the district court found Sandra proved temporal proximity because the premarital agreement was presented to her and signed the day before she and Karl married. But the court found no other factors exist and concluded temporal proximity alone could not render the agreement procedurally unconscionable.

We agree that Sandra has failed to show the premarital agreement is procedurally unconscionable. As the district court observed, the agreement "is not highly technical, nor does it contain confusing language." And though Karl "arguably had greater sophistication in terms of business experience," the court found that Sandra is an intelligent person "who possessed sufficient sophistication that she could have read and understood the Agreement." Most important is that Sandra was provided with ample opportunity to read the document and was advised to have an attorney review the agreement with her. She did neither. Although Sandra and Griffith gave conflicting accounts on what occurred at the meeting in Griffith's office, Griffith's testimony is bolstered by a memorandum he dictated the morning after the meeting in which he summarized what occurred. The memo states, in part:

> I pointed out to Sandra at the beginning of our meeting and before she signed the agreement that she should take the agreement to another attorney to have them go over for her and with her. Before signing she stated that she did not want to review it with an attorney and she understood what the agreement was about. She said she just wanted to get the signing of it over with. It was apparent she was not going to take it to another attorney. She then signed while in my office along with Karl and I notarized their signatures and gave them each a signed copy to take with them.

That Sandra failed to read the document or have it reviewed by an attorney of her choice does not render the agreement unconscionable. *See id.* at 518 ("Equitable principles will not permit a party to eschew an opportunity to consult counsel as to the legal effect of a proposed contract, execute the contract, and then challenge the enforceability of the agreement on the ground she did not have adequate legal advice."). As our supreme court has noted, "it is not sufficient that a party made an imprudent bargain":

> People should be entitled to contract on their own terms without the indulgence of paternalism by courts in the alleviation of one side or another from the effects of a bad bargain. Also, they should be permitted to enter into contracts that actually may be unreasonable or which may lead to hardship on one side. *It is only where it turns out that one side or the other is to be penalized by the enforcement of the terms of a contract so unconscionable that no decent, fair-minded person would view the ensuing result without being possessed of a profound sense of injustice, that equity will deny the use of its good offices in the enforcement of such unconscionability*.

*Id.* at 515 (emphasis added) (citation omitted). On the facts before us, Sandra falls short of her burden.

We then turn to whether Sandra's decision to sign the agreement was informed. A premarital agreement is not enforceable if (1) "a fair and reasonable disclosure of the property or financial obligations of the other spouse" was never made *and* (2) the person against whom enforcement is sought "did not have, or

reasonably could not have had, an adequate knowledge of the property or financial obligations of the other spouse." Iowa Code § 596.8(1)(c). Karl's personal financial statement was attached to the prenuptial agreement, and the district court found Sandra provided no evidence that Karl failed to disclose any of his assets or significantly understated or overstated the values. The district court also concluded that Sandra had adequate knowledge of Karl's property and financial obligations.

Again, we agree that Sandra has failed her burden of showing Karl failed to reasonably disclose his financial information and that she did not have adequate knowledge of it. Sandra testified that she knew Karl owned farmland that was encumbered by a $200,000 debt. She knew that Karl owned rental properties and had visited some of them. She had spent time at Karl's home and knew that he owned several antique cars. As our supreme court has recognized, section 596.8(3) only requires a "fair and reasonable" disclosure and "adequate" knowledge of the other party's property and financial obligations. *Shanks*, 758 N.W.2d at 519; *In re Marriage of Spiegel*, 553 N.W.2d 309, 317 (Iowa 1996) ("We have never required that a party have precise valuations of the other's assets; a general knowledge of the true nature and extent of the other's properties is sufficient."). Sandra admitted she has no proof that Karl concealed any of his assets from her.

Sandra has not met her burden of showing the premarital agreement is unenforceable. Because the agreement waived her right to elect against the will, we affirm.

**AFFIRMED.**